The next matter, number 251056, United States v. Patrick Baxter. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, your honors. Michael Pavian on behalf of Patrick Baxter. Before I begin, I'd like to reserve two minutes of my time for rebuttal. Okay. May it please the court. Patrick Baxter is serving a 20 year sentence for production of child pornography. This conviction must be vacated for at least two independent reasons. First, Baxter's alleged conduct did not satisfy the statutory definition of the offense, which carries a 15 year mandatory minimum sentence. Baxter did not use a minor to engage in sexually explicit conduct. To the contrary, he was alleged to have passively photographed and videoed his niece while playing He did not direct or prompt her conduct in any way, nor did his niece's conduct carry any sexual connotations whatsoever. So under that theory, anybody could take, with that argument, could take similar photographs of juveniles, and including very private parts or very private poses, and it would not satisfy the statute. Yes, the child pornography statute absent sexually explicit conduct, which is the term that the legislator has chosen here. Now there may be, as the D.C. Circuit observed in Hilly, there may be voyeurism statutes and things like that that may apply to some lesser conduct. But here, the terms Congress has chosen are sexually explicit conduct. And if you go to the child pornography production statute itself, it defines that term, and it defines it as one, sexual intercourse, two, bestiality, three, masturbation, four, sadistic or masochistic abuse, or five, lascivious exhibition of the anus, genitals, or pubic area. So the first four definitions do not apply. The dispositive question here is whether the images are lascivious. The law is also clear that child nudity alone does not make an image pornographic, and that's this Court's opinion in Sheehan. Rather, in the words of the Supreme Court, the child pornography statutes are directed at the hard core of child pornography. The phrase sexually explicit conduct, according to the Supreme Court in Williams, connotes actual depiction of the sex act. And that's consistent with the legislative history that indicates that Congress wanted to include only those activities where the child was engaged in sexually oriented acts. So if the child is acting innocently and your client is transforming that innocent conduct into lascivious conduct by the means that he's using to photograph and zero in on the child's private parts, why isn't that sufficient? Well, there may be cases in which, of course, the child is acting innocently, but the child is posed in a manner or the image is taken in a manner that may connote a willingness to engage in sexual activity and therefore constitute sexually explicit conduct. Here there is no zooming in. A child can't consent to sex. Of course not, Your Honor. I mean, so why isn't the focus on the defendant? Well, this Court has expressly... I'm sorry to cut you off, Your Honor. It's okay. Go ahead. This Court has expressly stated in Amaral that the focus must be on the objective criteria of the image's design. And I think there's an important reason for that. As the Court said... So why are the images here objectively designed to be lascivious? Well, we contend that they were not, Your Honor. And to Your Honor's question, there was no zooming in on the child's pubic area in this case. We contend that the images here do not meet the standard, at least some of the images. And in particular, I'd like to... Because there's photos only of the genitalia. It's not like the child's out there and it's... There are, you know... Are you talking about zooming, that you have to zoom in like two inches away or...? I'm not saying that would be required in every case, Your Honor. Again, this Court has applied a holistic, multi-factorial analysis. And I think here those factors cut in favor of Mr. Baxter and suggest that the evidence was insufficient. But there are other children, which is how he got the photographs in the first place. There are other children nude. But the only thing he's targeting is the young female's genitals. Well, Your Honor, I don't believe that's the case. If you look at the video, the first video is Exhibit 25.1. It starts out with depicting the other children, as Your Honor stated, who are playing. They're playing in a natural manner. They're getting ready for a bath. It's one of the children is, in fact, Mr. Baxter's son. At a certain point, the camera does shift and it depicts Baxter's niece, who rolls onto a bed. Now, at that point, Your Honor, it's true that her genitals become visible. But again, there's no zooming in and there's no evidence that Baxter, importantly, did anything whatsoever to prompt her behavior. So there are three categories that are really at issue here, right? You have the still bathroom photos. You have two videos. And then you've got some still pictures on a bed. I think the bed, for the sufficiency argument, is probably your biggest hurdle. Your Honor, I would say that that is the closest question, are the photographs on the bed. And there were 16 of those. We contend that those two were insufficient because, again, Baxter's niece is engaging in natural acts of a child. She's playing with her family. She happens to be nude, which, again, this court has clearly said is insufficient. But we don't think that is sexually explicit conduct. Right. And I mean, I've read your arguments. But if I go to the DOS factors, I think that's where you're going to have a problem, at least as to those pictures. I would agree, Your Honor, that those are perhaps the most problematic under the DOS factors. For all the reasons set forth in our brief, we do contend that all of the images were insufficient here. But I think applying the DOS factors to the two videos is particularly illuminating. Again, even if I agree with you that let's say the videos maybe wouldn't meet even the Yes, Your Honor. We still, for you, to prevail on the sufficiency argument, you've got to deal with those bedroom pictures. Your Honor, I don't believe that's true under the Supreme Court's decision in Yates. Because count three was submitted to the jury as a count that included multiple different images, all three of those sets of images that Your Honor just mentioned. And we submit that it's impossible to tell here which ground the jury selected. And for that reason, under Yates, the court must vacate the count three conviction if it finds that any of the images were insufficient to satisfy the statute. Baxter contends that his alleged conduct fails to come within the statutory definition of the crime. It's importantly not a situation in which there's simply no evidence to factually connect the defendant to one government theory, like in the Supreme Court's opinion in Griffin. The issue is not the factual sufficiency of the evidence of Baxter's involvement in the charge conduct, but rather whether the statute applies at all to that conduct. As set forth in our briefing, courts have continued to apply Yates in similar circumstances. Unless Your Honors have any further questions regarding this issue, I'd now like to move on and address some of the evidentiary issues. Let me just ask another issue. In this case, Baxter testified. So there's an issue also of credibility weight of the evidence. Certainly, the jury did not believe his testimony. But wouldn't the fact that he testified, doesn't the jury have to consider all the evidence for insufficiency challenge? Yes, the jury should consider all the evidence in a sufficiency challenge. And Baxter's testimony, I think, actually increased the risk that the jury relied on the videos, which we suggest are the most clearly insufficient of the sets of images here. And that's because Baxter testified. Wouldn't your argument be better if he hadn't testified? He doesn't have to testify, but he is testifying. He's talking about all this evidence and the reason why it got recorded, the photos were taken. So shouldn't we look into that also? The court certainly has to consider all the evidence. But I don't think I would agree that the Yates argument is weaker given Baxter's testimony. I actually think that it's stronger. And that's because Baxter admitted that he took the videos and disputed whether he took the photographs. So in those circumstances, I think that increases the risk that the jury looked at the videos, which, again, we contend were the most clearly insufficient of the categories of images, and said, well, he didn't deny taking those. And that's the basis we're convicting him on. We don't know because this was submitted as a general verdict. But under Yates, where it is impossible to tell, the conviction must be vacated. And importantly— So what you're saying is that the verdict maybe should have had three questions as to the different types of photos or videos? It could have, but it didn't. And again, under Yates, that's the result there is if any of the images are insufficient, I believe the court's required to vacate the conviction. Can I just turn you to the enhancement questions? Let's say we agree with you that the obstruction enhancement was misapplied, or even that the pattern enhancement was misapplied. Yes, Your Honor. Such that there would have been an error in calculating the guideline sentencing range. Yes, Your Honor. Here, your client got the mandatory minimum for the production charges. So even if we found error, why would it matter? Should we still remand? Your Honor, he did not. My belief, he did not get the mandatory minimum for the production charges. I believe he got a 20-year concurrent sentence, concurrent with, I believe it was 14 years on the other counts. OK, so explain this to me. Maybe I have this wrong in my head. If we agree with you on one of the enhancement issues, practically, what would that mean for the guideline sentencing range? It would mean that the guideline sentencing range would go down, and that the court would therefore, I believe, vacate the sentence and remand for resentencing. OK, and so let's say remand for resentencing, and we say no obstruction. If the court found no obstruction, then the sentencing range would be lower by those two levels. And then how would that affect the sentence on the production? Well, I don't think we know exactly, right? The court would be considering a lower guideline range. I think this court has been very clear repeatedly, and we've cited many of the cases in our brief. That when a guideline error affects the ultimate guideline calculation, the ultimate sentencing range, a remand is required. Because in those circumstances, the government cannot satisfy its burden of proving the error harmless. Unless the court has any further questions on that issue, I would like to briefly address the evidentiary issues.  The government does not dispute the hearsay testimony about an alleged tip received from a non-testifying FBI agent was clearly inadmissible. It has been clear in this circuit for well over a decade that government investigators may not testify based on the overall investigation rather than their personal observations. But the government concedes that is precisely what happened here. The inadmissible testimony was featured repeatedly and prominently by the government in its opening statement, cross-examination of Baxter, and closing argument. This extensive use of the testimony belies the government's current claim that Baxter was not prejudiced by its erroneous admission. The government's repeated reliance on this testimony was no accident. This was a purely circumstantial case. There was child pornography found on Baxter's device, but no direct evidence as to how it got there. And there were significant reasons to doubt the government theory. There was no child pornography or evidence that child pornography had been deleted on the laptop that the government claimed was used to transfer the files to the SSD. And there was unrebutted testimony that Baxter maintained all the devices openly in his family home with no attempt at secrecy. Respectfully, your honors, the rules of evidence cannot simply be disregarded whenever child pornography is found on a defendant's device. The law requires knowing receipt and possession of child pornography. The government used the FBI tip that someone in Baxter's home was observed, quote, attempting to download child pornography to fill this gap in its proof. The government told the jurors in closing, among other things, remember the FBI tip. Somebody's in the house. Somebody's accessing Freenet. Somebody you know now as the defendant is downloading child pornography from Freenet. The government also specifically used this inadmissible testimony to undermine Baxter's credibility as a witness, which to your honor's point was a key issue in the trial. With respect to the jurisdictional element, again, the government does not dispute that the only evidence arguably supporting a finding that the SSD and Baxter's iPhone were manufactured outside of Massachusetts was clearly inadmissible. And on appeal, it relies on extra record speculation contrary to this court's. May I just finish the sentence, your honors? Contrary to this court's finding in ETM where it said, speculation is not foundation evidence. And the government's elicitation of testimony without attempting to lay a foundation was plain error. Unless your honors have further questions, I'll rest until rebuttal. Okay. Thank you. Counsel for the government. Please introduce yourself back on the record to begin. Back on the record to begin. Good morning, may it please the court. Alexia DeVincentis on behalf of the United States. Unless the court has a different preference, I'll go. I'll address the issues in the same order that defense counsel has, beginning with the sufficiency question. And I think we can start by narrowing the scope of the inquiry a bit here because the defense use-based arguments and his Hilly-based argument regarding the meaning of sexually explicit conduct are squarely foreclosed by the law of the circuit, which the defendant failed in his opening brief to address and only belatedly in his reply brief attempts to address and does so unpersuasively. The D.C. Circuit in Hilly acknowledged that its construction of the statute substantially overlaps with the fifth DOS factor. In other words, the inquiry into whether or not the child displays a sexual coyness or willingness to engage in sexual activity. Yet in Fabrizio, this court specifically rejected the idea that the fifth DOS factor was necessary to a finding of lasciviousness, recognizing that children don't typically have countenances inviting sexual activity and that the absence of a sexual come-on does not mean that the image is not lascivious. Moreover, this court in cases subsequent to Fabrizio has affirmed convictions based on surreptitious recordings where the child was not engaging in any sort of sexual activity, but nonetheless the defendant was able to capture his or her genitalia in a manner that a jury could determine was lascivious. Let me ask you, the fact that the video is not like one second, you know, recorded by mistake, and that there are several photographs, does that strengthen the government's argument? Because this is not a single photograph that we have. There are several photographs, and they're focusing on this pose. There's one of the bed, there's one of the genitalia, and they're very well described in the briefs. Does that strengthen government's case? Well, in our briefing, we've conceded for present purposes that the inquiry into lasciviousness is limited to the four corners of the individual image. We would be looking at whether each individual image satisfies the standard. But importantly, and to get to the premise of some of Judge Montecalvo's questions, the court can affirm here as long as any one image that was submitted to the jury under the production count, the jury could find lascivious. And we've set forth in the brief the reasons that we believe that the jury could find that each and every single one of these images was lascivious. But importantly, the defendant, if you read his brief carefully, he doesn't actually make any argument under existing First Circuit law, in other words, applying the DOS factors, that the bedroom photographs, no reasonable jury could find them lascivious. And for good reason, as any reasonable view of those photographs would show, a jury could make that finding. And so by the defendant's own tacit admission here, those bedroom photographs, the jury could find them lascivious. And therefore, affirmance is actually required because the defendant is wrong here that this inquiry is governed by Yates. If the court looks at Griffin, specifically at pages 58 and 59, the court there rejected the argument that the mere fact that evidence is insufficient as a matter of law makes it a Yates error, explaining that Yates errors are mistakes about the law as opposed to mistakes concerning the weight or factual import of the evidence. That explains why in Pullman, this court found a Yates claim preserved for the defendant had objected to the underlying jury instructions that were alleged to have embodied the mistake of law and unpreserved where he didn't. And that conclusion is not foreclosed contrary to the reply brief suggestion by the Supreme Court's decision in Black, which merely held that the mere fact of failing to acquiesce to a special verdict form would mean that a Yates claim is unpreserved. But really, the question of preservation is somewhat of an aside here, because as this court has repeatedly held, the question of lasciviousness is a question of fact for the jury. In other words, it is a question about the weight or import of the evidence, and thus squarely within Griffin. To turn to the evidentiary claims, I- Can I just ask you, I'm sort of stuck on these enhancements. If you think about the pattern enhancement, if we found that only the bedroom photos satisfy the definition of lascivious conduct, do we have a problem with the sentencing enhancement for pattern of behavior? And I guess sort of related to that, if you look at the two other categories in that production, you know, I think you could say some of the DAS factors are satisfied, some aren't. And I'm just wondering how we weigh that when we're trying to evaluate the enhancement, rather than the sufficiency arguments. So to be clear, the government firmly believes that even the bedroom videos could be found lascivious. You have AF on a bed with the camera very clearly trained on her as she spreads her legs, clearly exposing her genitalia and anus. There can be no contention that if an adult engaged in the same behavior, it would suggest a jury could find it lascivious. So there's no reason we should think about it differently, just because this is a child who doesn't have a countenance inviting sexual activity. So even if there were some questions about the bathroom photographs, we believe you would still have the bedroom photographs and the bedroom videos supporting the pattern enhancement. If the court somehow disagreed as to the videos, we nonetheless believe that we would be under plain error here because the defendant didn't specifically raise this objection in response to the PSR. And he wouldn't be able to satisfy the plain error standard. So is it objectively lascivious? Excuse me? Is it objectively lascivious? Is it lascivious in the eye of the beholder? How do you... So this court has... It doesn't make sense for us to say it's lascivious in the eye of the child. No, and if I said something to suggest that, I apologize as I would have misspoken. This court has left open the question about whether and under what circumstances the defendant's subjective intent can factor into the analysis. We believe that for purposes of intent, whether in the case of completed crime or an attempt crime, you would obviously be able to consider the subjective view of the defendant. But for present purposes, the court doesn't really need to decide this question of whether you can look beyond the four corners because as we set forth, the four corners of the image themselves support the jury's conclusion that the images were lascivious. Unless there are any other questions on the sentencing enhancements, I would like to address the defendant's evidentiary claims. I do have one more question.  Tell me about the obstruction enhancement. As I understand your argument in your brief, you sort of agree, look, the trial judge didn't really give a great reason for why she was applying the obstruction enhancement, but it's harmless anyway. Because the jury found the defendant guilty. Can you just explain that argument a little better to me?  So the district court does have an obligation when the defendant objects to an enhancement to make specific findings about the elements of perjury. And we can see that the district court didn't do that here. But the failure to explain that error like any other error is reviewed for harmlessness or plain error as the case may be. And the record demonstrates that the error would be harmless in this case. The district court was bound to accept the facts found by the jury. And as the government sentencing memorandum set forth, and we've explained in the brief, the fact, the relevant findings with respect to falsity and materiality of Baxter's testimony were necessarily made by the jury in convicting him. And moreover, the defendant has never suggested either below or on appeal that somehow the court could have found that his false testimony was the result of any mistake or confusion. In fact, the defendant, if you look at his rule 5 brief, doesn't actually contest the government's harmlessness analysis at all. Instead, what he's suggesting is that the mere failure to explain requires an automatic remand. But rule 52 is clear. Any error that does not affect substantial rights must be disregarded. So we naturally engage in the harmless inquiry. And the cases that the defendant cites don't support any other conclusion. There just wasn't a basis in the record in those cases to find that the error was harmless in the manner that the record supports here. Thank you. So then to turn to the defendant's evidentiary arguments, all of which are unpreserved, I'd take the defendant to be arguing that without those errors, there's a reasonable probability of two things. One, that the jury would not have found that he knowingly possessed the child pornography. And two, that the jurisdictional elements were satisfied. I'll take those in turn, beginning, of course, with the argument regarding the knowing possession of child pornography. The defendant's argument here really strains credulity. In fact, you can take every single piece of evidence that he is challenging in one form or another on appeal, whether rightly or wrongly. And the jury would still be left with the fact that this SSD, which he admitted was his, and both he and his wife testified only he used, and certainly the three-year-old and one-year-old in the house were not using, was password protected and contained hundreds of child pornography files. Moreover, those files included free net files that the evidence showed were downloaded on three separate dates, October 5th, 18th, and 29th, on dates when the defendant's SSD was connected to his computer. Moreover, you have the fact that the SSD also contained lascivious images of AF, along with a picture of just her face. But rather, excuse me, conspicuously, not a photograph that was taken with the same phone and that shows up on his laptop of the family as a whole. There is no possibility, much less a reasonable probability, that a jury confronted with these facts was going to find that the defendant did not knowingly possess this child pornography. And I do want to note in response to some of the points made in the reply brief, although you can take every piece of evidence that he challenges off the table for purposes of the cumulative error inquiry, there are two pieces of evidence, two categories of evidence, that we don't agree get taken off the table. The first is Montoya's testimony about Freenet, and specifically the fact that you had to have a key in order to request child pornography. Montoya specifically testified that he had observed Freenet in his training, and the suggestion that the mere fact that that came out in cross-examination means it should somehow not be considered makes no sense. If the government had neglected in its direct examination to lay a foundation, but came back and did that cleanup work on a redirect, this court wouldn't say that foundation was lacking. The mere fact that the cross-examination obviated our need to do that on redirect should mean nothing here to the analysis. Moreover, another category of evidence that we believe you get to consider in the cumulative error analysis is the evidence from the extraction report that the defendant is challenging on the basis of the best evidence rule. That includes the fact that the SSE showed that there was search history related to Freenet, that it had Freenet installation instructions, showed Freenet as an application that had been downloaded, and contained hundreds of messages from the Freenet messaging board, as well as the fact that the user of the SSD had accessed the Baxter-Patrick Outlook email. I'm sorry, please continue. So we've conceded that there's a technical violation of the best evidence rule, but the defendant fails to offer a basis for believing that just because of that technical violation that the court wouldn't consider the next best evidence that was offered, which was admissible. And in fact, if you look at the purpose of the rule, which is to prevent inaccuracy and fraud in the proof regarding the underlying writings, because of that, various courts have held that the failure to object on a best evidence basis actually is waiver, and even the courts that don't go that far say no plain error, where there's no indication that somehow the testimony about that was false or the underlying writing doesn't exist. And so we believe that in absence of similar circumstances, there's no reason that this court shouldn't be considering the second best evidence. There aren't any such circumstances here. And in fact, I think if anything, the records suggest that this was a strategic decision on the defendant's part. Both Montoya, who had requested and personally reviewed the extraction report, and Kajita, who prepared the extraction report, were on the stand testifying about these extraction reports. The defendant never objected on best evidence grounds. He never moved to put the evidence in himself. And it's clear from his closing arguments that the reason why is because that then enabled him to say that the government hadn't shown the jury any of these hundreds of Freenet Messaging Board messages. So again, we believe that the evidence that's challenged on the best evidence grounds also is part of the consideration. Could you address the jurisdictional, the arguments about jurisdiction, particularly as to count three? Yes, it's very straightforward. So again, here we're on plain error. The defendant never objected on the grounds that he is raising on appeal. And so the jurisdictional question as to count three is satisfied on the basis of Montoya's testimony that the iPhone used to create the images was manufactured outside of Massachusetts. The defendant is correct that Etienne states that you can't speculate as to personal knowledge. But Etienne also states that where the defendant fails to object on personal knowledge grounds, he cannot benefit on plain error review from any ambiguity in the record as to whether or not the testifying witness in fact had personal knowledge. And so where it's unclear what the basis for Montoya's testimony is, he can't satisfy his plain error burden. And unless the court has any questions regarding any other issues, the government would rest on its brief. Okay. Thank you, counsel. Two minutes rebuttal. Please identify yourself. Michael Pabian on behalf of Patrick Baxter. So how do you respond to the government's argument? So this court has never affirmed a child pornography production conviction on remotely analogous facts. No, I meant just as to count three, the jurisdictional argument. Just as to count three. Well, Your Honor, Etienne found plain error, right? So the government wants to rely on a different aspect of Etienne. Where a witness testified, the court said that it was clear that most of the witness's relevant testimony was based on personal knowledge. And with respect to that portion of the testimony, because most of it was based on personal knowledge, the court was not going to guess about which aspects were not based on personal knowledge on plain error review. What the government fails to adequately grapple with is there was also a voice identification at issue in Etienne, where an agent testified to somebody's voice in a recording and the government laid no foundation for that evidence, just as it admittedly laid no foundation for the evidence at issue here. And it was in that context that the court said, and I'll read it again because I think it's very important. Speculation is not foundation evidence. The government here says Montoya very well could have had personal knowledge of where iPhones are manufactured. That is exactly the type of speculation that this court prohibited in Etienne. I'd also note, Your Honor, that the government time and time again failed to lay foundation for evidence that it offered in this case. There's no precedent, certainly none cited by the government, for the government's attempt to rely on evidence that could have been, but indisputably was not offered to cure the prejudice from a clear error. The alleged strategy argument with respect to the best evidence rule that the government now raises is raised nowhere in their briefs. As we've stated in our briefs, there was no plausible strategic reason for the failure to object here. And lastly, I'd just like to note that the government at trial disagreed with its current argument that the government did not need this evidence to convict Baxter. May I finish the thought, Your Honors? Please. Over and over again, from its opening statement, some of the first words of its opening statement, to its cross-examination of Baxter, right through closing argument, multiple times in closing argument, the government asked the jury to rely on this evidence to convict Baxter. We submit that that's a plain error. Thank you. Thank you, Counsel. That concludes argument in this case.